IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH CIGLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| FOUR SEASONS HEATING & AIR ) | |
| CONDITIONING, INC., MICHAEL ) | **Jury Trial Demanded** |
| CASSITY individually and JUAN AVILA, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, JOSEPH CIGLER, by and through his attorneys, KAPERNEKAS + ASSOCIATES, LTD. and pursuant to Fed. R. Civ. P. 7(a) and for his Complaint against Defendants, FOUR SEASONS HEATING & AIR CONDITIONING, INC., MICHAEL CASSITY individually and JUAN AVILA individually, states as follows:

### FACTS COMMON TO ALL COUNTS

1. Plaintiff, Joseph Cigler ("Cigler"), was employed by Defendant Four Seasons Heating & Air Conditioning, Inc. ("Four Seasons Heating") between approximately May 26, 2009 and November 3, 2010. During the time period relevant to the Complaint, Plaintiff was a resident of Lake County, Indiana.

2. Defendant Four Seasons Heating is a corporation which serves as a heating and air-conditioning contractor for the Chicagoland area and Northwest Indiana. During the time period relevant to this Complaint, all of Plaintiff's work was performed for Four Seasons Heating, located in Bedford Park, Cook County, Illinois, 60638.

3. Defendant, Michael Cassity ("Cassity") was employed by Four Seasons Heating and served as the President and General Manager during the time period relevant to this Complaint.

4. Defendant, Juan Avila ("Avila") was employed by Four Seasons Heating and served as Cigler's Department Manager and his immediate supervisor during the time period relevant to this Complaint.

5. Plaintiff was hired to serve as a Service Technician.

6. Upon his hire, Cigler was immediately assigned extreme work hours.

7. Plaintiff's work as a Senior Service Technician required him to drive a motor vehicle, walk, walk up and down stairs, bend, kneel and lift up to 40 pounds on a regular basis, as well as push and pull heavy objects.

8. The long work hours and repetitive amounts of kneeling, squatting, and lifting caused Cigler to experience significant pain in his knees which substantially limited his ability to work particularly long hours.

9. During the first month of Plaintiff's employment and thereafter, Cigler advised Defendants that the extreme work hours were causing him severe pain in his knees.

10. Cigler engaged in a meeting with Defendants in approximately July of 2009 where he advised Avila and Cassity that he was having difficulty working the extreme work hours due to the pain in his knees.

11. Cigler explained that he needed to keep working, but that he could not work so many hours per day.

12. Defendants requested medical documentation to support a reduction in per day work hours. At the same time, Defendants also immediately began reducing Cigler's hours of work per week and the number of times they would call him into work.

13. Cigler needed to work to earn a living, but was now only being assigned 10-20 hours per week.

14. Cigler advised his employer that he could not go to the doctor because he did not have any money to pay for doctor exams due to the fact that Defendants require an employee to be employed for 6 months before offering insurance, and also because his hours had been so significantly reduced by Defendants that he was not earning enough money on which to survive.

15. Cigler's pain on the job became so unbearable that on or about October 6, 2009, Cigler had to go to the emergency room.

16. In December of 2009 when Plaintiff began receiving insurance from Defendants, he scheduled a doctor's appointment.

17. On January 6, 2010 he submitted a doctor's note that advised Defendants that he should "work no more than 8 hours/day." The note further indicated that Plaintiff suffered from cartilage damage in his right and left knees and that he would need to have an MRI conducted.

18. The subsequent MRI demonstrated torn medial menisci in both of Cigler's knees. Cigler was advised that surgery would be needed to correct the problem with his knees.

19. Cigler advised Defendants that he needed surgery to correct the problem with his knees.

20.     After submitting his doctor's note, Cigler intended to remain a full-time employee and to work a full-time schedule, and needed to have more hours per week. Cassity advised Cigler that there were plenty of hours to be worked.

21.     However, even after receiving medical documentation that made clear that Plaintiff could work 8 hours per day, Defendants denied Plaintiff work shifts in an effort to get him to quit his employment.

22.     From approximately January 2010 and throughout the remainder of Plaintiff's employment, Defendants only offered Plaintiff between 10-20 hours of work per week.

23.     Defendants would intentionally pass over Plaintiff's name when calling employees into work because they did not want to accommodate his request for working any more than 8 hours per day.

24.     Defendants would call other employees to fill the work hours and falsely advise Plaintiff that there were no work hours available.

25.     Furthermore, Avila continued to harass Cigler regarding Cigler's request not to work more than 8 hours per day, and to pressure Cigler to work longer hours to get the job done on days when Cigler was working.

26.     Avila intentionally gave work hours to other employees who did not have limitations on their hours, in preference to Plaintiff.

27.     Prior to his significant knee problems, Cigler's work performance was satisfactory to his employer.

28.     Cigler was an excellent employee and more qualified than the other Service Technicians, as evidenced by the fact that he was paid $21 per hour (not

including commissions) which is more than the top Service Technician's hourly rate of pay.

29. After determining that Plaintiff was not going to voluntarily leave his employment, Defendants sought to terminate Plaintiff's employment under false pretenses.

30. One of the tasks performed by service technicians is that of a "clean & check," which involves the maintenance of furnaces. The Company training that was provided to Cigler included instructions to call one of the trainers, Mr. Ellis Pratch ("Pratch") when questions arose.

31. In performing routine clean and check services, Cigler received some abnormal carbon monoxide readings. Cigler advised Avila about the abnormal readings and Avila directed Cigler to contact Pratch for further direction.

32. Pratch advised Cigler to conduct the clean & check tests in a manner which was different than Defendants' standard manner for conducting such tests. Cigler followed Pratch's instructions.

33. Cigler was later called into Avila's office and advised that he was being terminated for violating Company policy with respect to the manner that he had conducted the clean & check tests, even though Cigler had followed the directions of Pratch.

34. Cigler tried to explain that he simply followed the instructions of Pratch, but Avila would not change his mind, nor contact Pratch, and proceeded to terminate Cigler's employment.

35. At Cigler's request, Pratch tried calling Avila several times to explain that Cigler had not done anything inappropriate and that Cigler had only followed the directions of Pratch. However, Avila refused to return Pratch's calls.

36. The pretextual nature of these actions is evidenced by the fact that Avila would not return Pratch's calls or investigate the alleged misconduct.

**COUNT I: VIOLATION OF FAMILY AND MEDICAL LEAVE ACT**
**(Against Defendants Four Seasons Heating, Cassity, and Avila)**

37. Plaintiff realleges Paragraphs 1 through 36 as though fully set forth herein.

38. This is a claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. Accordingly, this Court has jurisdiction under 29 U.S.C. § 2617 as well as 28 U.S.C. § 1331.

39. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

40. Cigler was employed by the Defendants in this District and is an "eligible employee" as defined by 29 U.S.C. § 2611(2) as Cigler was employed by Four Seasons Heating for more than 12 months (between May 2009 and November 2010) and worked more than 1,250 hours over a twelve month period.

41. During the time period relevant to the complaint, Defendants employed over 50 employees, including Cigler, and are "employers" as defined by 29 U.S.C. § 2611(4).

42. In his capacity as Cigler's supervisors, Defendants Avila and Cassity are persons who act, directly or indirectly, in the interest of Four Seasons Heating to Plaintiff within the meaning of 29 U.S.C. § 2611(4)(A)(ii)(1) and are subject to individual liability

because they had the power to grant or deny Cigler leave and had some control over the decision to terminate Cigler's employment.

43. During Plaintiff's employment, Plaintiff submitted paperwork from his doctor, indicating that he had been to the emergency room, that he had cartilage damage to his right and left knees, that he needed to have an MRI performed, and that his hours of work should be limited to no more than eight hours a day.

44. After having the MRI performed, Plaintiff's doctor, Ronald Silver, M.D. advised Plaintiff that he was in need of arthroscopic surgery.

45. Plaintiff advised his supervisors of his need for surgery, but was not offered FMLA time nor was he given any information to explain his rights under the FMLA despite his eligibility for such leave.

46. Plaintiff was afraid to take time off from work for fear that he would lose his job as he was already being harassed by Avila due to the doctor's note that indicated that his work shifts had to be limited to 8 hours.

47. Plaintiff was in need of using leave to which he was entitled under the FMLA, but was not advised of his rights.

48. On or about November 3, 2010, Plaintiff was terminated from his employment for allegedly having violated a Company Policy. Defendants' reason for termination was a pretext.

49. Cigler was never advised of his rights under the FMLA and was unable to exercise his rights under the Act. As described above, Cigler suffered from serious health conditions throughout much of his employment which made him eligible for FMLA,

7

leave but was never given the required notice under the law. On several occasions, Cigler gave Defendants sufficient notice that FMLA leave was needed.

50. The Defendants willfully failed to inquire further of Plaintiff to ascertain whether leave was FMLA qualifying as required by 29 C.F.R. § 825.301(a).

51. The Defendants willfully failed to notify Plaintiff of his eligibility to take FMLA leave within five business days of being put on notice that Plaintiff was eligible for leave as required by 29 C.F.R. § 825.300(b).

52. The Defendants willfully failed to provide Plaintiff with notice of his rights under the FMLA as required by 29 C.F.R. § 825.300(c).

53. By discouraging and intimidating Plaintiff from using his rights under the FMLA, failing to inform him of his rights, and ultimately terminating him due to his need for FMLA leave, Defendants willfully interfered with his rights in violation of 29 U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff requests that this Court enter judgment for him and against Defendants for violating the Family and Medical Leave Act and award actual damages, court costs, attorneys' fees, interest, liquidated damages associated with a willful violation of the Act, and for any other relief that this Court finds just.

### COUNT II: VIOLATION OF AMERICANS WITH DISABILITIES ACT— FAILURE TO ACCOMMODATE
**(Against Four Seasons Heating)**

54. Plaintiff realleges Paragraphs 1 through 36 as though fully set forth herein.

55. After Cigler's unlawful termination, on December 30, 2010, Plaintiff filed charges against Defendants with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission (Charge No. 440-2011-00999) alleging

discrimination on the basis of disability under the ADA. A copy of the Charge is attached as *Exhibit A*.

56. The EEOC issued a Right to Sue letter on August 17, 2011 after more than 180 days had passed since the filing of the charge. This Complaint is therefore brought within 90 days of the issuance of such Right to Sue letter. A copy of the Right to Sue letter is attached as *Exhibit B*.

57. Count II is a failure to provide reasonable accommodation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.* Accordingly, this Court has jurisdiction under 28 U.S.C. §1331 and 1343(4).

58. Venue is proper in this District because a substantial part of the events giving rise to the claim occurred in this District.

59. Defendant Four Seasons Heating is an employer within the meaning of the ADA because it employs more than 15 employees. 42 U.S.C. §§122202 & 12111(5)(A).

60. Plaintiff was (during his employment with Four Seasons) a qualified individual with a disability as defined under the ADA in that he could perform the essential functions of the job, with or without a reasonable accommodation, and had a significant health impairment which substantially limited him in one or more major life activities (including but not limited to walking and working).

61. Defendant Four Seasons Heating regarded Plaintiff as having a disability.

62. During the time period relevant to the Complaint, Cigler suffered from torn menisci in both of his knees which substantially limited his ability to work, lift, kneel, and squat.

63. As stated throughout this Complaint, Cigler repeatedly informed his supervisors and Defendants that his condition was severe and substantially limiting of his ability to work more than 8 hours per day.

64. In addition to submitting doctor's notes, Cigler informed Defendants, and Defendants were aware, that Cigler was suffering from severe pain, swelling, difficulty walking, and inability to perform his tasks due to the long work days demanded by Defendants.

65. Cigler requested the reasonable accommodation that his work schedule be modified so that he would not work more than 8 hours per day. Had Defendants done so, Cigler would have continued to enjoy equal employment opportunities as his co-workers.

66. Instead, Defendants refused to provide Plaintiff with a reasonable accommodation for his obvious disability, or to determine whether another accommodation was possible, and continued to demand that he work in excess of the hours determined by his doctor as appropriate.

67. Defendants failed to engage in an interactive process of finding a reasonable accommodation in an effort to keep Cigler employed despite their knowledge of his disability and/or their perception thereof. This failure to accommodate Cigler eventually led to his termination in violation of the ADA.

68. Defendant Four Seasons violated the ADA by refusing to reasonably accommodate Plaintiff's disability (or perceived disability) and by making no effort to engage in the interactive process which may have led to a reasonable accommodation under the ADA.

WHEREFORE, Plaintiff requests that this Court enter judgment for him and against Defendants for violating the Americans With Disabilities Act and award actual and compensatory damages, punitive damages, court costs, attorneys' fees, interest, and for any other relief that this Court finds just.

### COUNT III: VIOLATION OF AMERICANS WITH DISABILITIES ACT—DISPARATE TREATMENT
#### (Against Four Seasons Heating)

69. Plaintiff realleges Paragraphs 1 through 68 as though fully stated and alleged herein.

70. As noted above, Plaintiff was in need of FMLA leave and/or a reasonable accommodation regarding his disability so that he could continue working effectively as an employee of Four Seasons.

71. Despite not receiving such accommodations or leave, Plaintiff continued to work for Defendant and performed his job duties in a satisfactory manner.

72. However, Defendants attempted to force Plaintiff to voluntarily leave employment by limiting his weekly hours to between 10 and 20 hours and passing him over for work when it was available.

73. When Plaintiff did not quit his job, Defendants issued pretextual reasons for discipline infractions, and terminated his employment on November 3, 2010.

74. Similarly-situated non-disabled employees were assigned more work hours per week, and remained employed.

75. Defendant took the actions against Cigler because he suffered from his disability and/or because Defendants regarded him as disabled.

76. Cigler's work performance was satisfactory prior to his termination. As such, Defendants termination of Cigler was unlawful within the meaning of the ADA, and the reasons for his termination are pretexutal.

WHEREFORE, Plaintiff requests that this Court enter judgment for him and against Defendants for violating the Americans With Disabilities Act and award actual and compensatory damages, punitive damages, court costs, attorneys' fees, interest, and for any other relief that this Court finds just.

Dated: November 15, 2011

                                              Respectfully submitted,

                                              JOSEPH CIGLER

                                              By:_____
                                                       One of his attorneys

Dina Kapernekas
Brian J. Hipp
KAPERNEKAS + ASSOCIATES, LTD.
1447 W. Flournoy Street, Ste. 1
Chicago, IL 60607
(312) 492-0099 (phone)
(312) 455-1088 (facsimile)